WISE, Presiding Judge.
The appellant, Andrea Terell Marshall, was convicted of one count of trafficking in marijuana, a violation of § 13A-12-231(1), Ala.Code 1975, and one count of unlawful possession of a controlled substance (cocaine), a violation of § 13A-12-212(a)(l), Ala.Code 1975. The trial court sentenced him, as a habitual offender, to serve concurrent terms of life in prison on each conviction. See § 13A-5-9(c), Ala.Code 1975. Marshall filed a motion for a new trial, which the trial court summarily denied. This appeal followed.
On April 4, 2007, Sergeant Michael Drummond of the Montgomery Police Department obtained a warrant to search a house at 3540 Whiting Avenue. In his *2 affidavit in support of the search warrant, Drummond stated:
“1) Probable cause being that in the month of March, 2007 a confidential and reliable source observed a large quantity of cocaine inside the residence of 3540 Whiting Avenue Montgomery, Alabama. The cocaine was in the control of black male Andre[a] Marshall.
“2) Further probable cause being the in the month of March 2007, the same confidential source observed large quantities of cocaine inside the residence of 3540 Whiting Avenue. The cocaine was being sold by several individuals.
“3) Further probable cause being that in the month of April 2007, the same confidential source observed Andre[a] Marshall selling cocaine from the residence of 3540 Whiting Avenue. Cocaine was also being sold by B/M AKA ‘L.’
“4) Further probable cause being that in the month of April 2007, the same confidential source observed a large quantity of cocaine inside 3540 Whiting Avenue Montgomery, Aabama. This occurred within seventy two hours of the issuance of this warrant.”
(S.C.R. 10.)
The State presented evidence that a United States marshal’s task force was trying to locate and arrest an individual known as Roderick Williams; that the task force had information that Williams had been seen at the house at 3540 Whiting Avenue; that the Montgomery Police Department was trying to coordinate with the task force regarding executing the warrant to search the house and the arrest warrants for Williams; that the task force conducted surveillance at the house; that, on April 5, 2007, members of the task force saw Williams at the house and went to the residence in an attempt to apprehend Williams; and that, when the task force arrived, Marshall and another individual were in a vehicle that was parked in the driveway of the house, and the engine of the vehicle was running. The State also presented evidence that members of the task force removed Marshall and the other individual from the vehicle; that the members of the task force obtained Marshall’s consent to search the vehicle; that, during the search, an officer looked in a suitcase and found forty-two blocks of what appeared to be marijuana; that two of the blocks were tested; and that forensic testing revealed that the blocks contained more than 2.2 pounds of marijuana. The vehicle was a rental vehicle, and Marshall told members of the task force he had rented the vehicle and was driving it.
Members of the task force contacted the narcotics bureau of the Montgomery Police Department, and members of the narcotics bureau went to the residence on Whiting Avenue and executed the search warrant. During the search of the house, officers found a clear plastic bag that contained marijuana in the living room and a set of scales and a clear plastic bag that contained cocaine and crack cocaine in one of the bedrooms.
Marshall argues that the trial court erred when it did not require the State to disclose the identity of the confidential informant. Specifically, he contends that the confidential informant was a material witness and that the trial court’s refusal to require the State to disclose the informant’s identity denied him the right to confront and cross-examine witnesses against him.
After the jury was sworn, the trial court and the parties discussed the admissibility of the search warrant and the confidential informant’s statements that were included in the affidavit in support of the search warrant. During that discussion, the following occurred:
*3 “[PROSECUTOR]: The reason that the search warrant and the contents inside the search warrant are important is because the cocaine was located inside the residence, and he’s charged with having possession of that cocaine inside the residence.
“THE COURT: And I will let you talk about that—
“[PROSECUTOR]: Bui&wkey;
“THE COURT: —specifically if that’s where the unlawful possession of a controlled substance comes from.
“[PROSECUTOR]: Right. But part of the proving the unlawful controlled substance is that he’s been in that residence before with cocaine and that’s been observed by a Cl.
“THE COURT: I don’t — I don’t have a problem with that. I’m just talking about the specific search warrant. Let’s not talk about the guns and all of that stuff. Let’s just talk about the cocaine we found in the house.
“[PROSECUTOR]: Right. And I’m following up with—
“THE COURT: That’s what he’s charged with.
“[PROSECUTOR]: —what you’re saying. The cocaine — the basis for the search warrant for inside the residence was based on him being seen with cocaine inside that residence before. And so—
“THE COURT: I just said he could talk about that, [Prosecutor]. Hello, is anyone listening to me?
“[DEFENSE COUNSEL]: Judge, I object—
“THE COURT: He’s objecting, but I’m going to let you.
“[PROSECUTOR]: Okay.
“THE COURT: That’s fine.
“[DEFENSE COUNSEL]: You’re saying that they’re allowed, Your Honor, to get into the contents of—
“THE COURT: No. I’m saying what they can say is, hey, Detective Drum-mond, you got a search warrant? Yes, we did. And what did you base your search warrant on? Well, that we had a Cl who went in there three times and on these three times he bought drugs from the defendant, Andre[a] Marshall. I mean—
“[DEFENSE COUNSEL]: Judge—
“THE COURT: —that’s the case.
“[DEFENSE COUNSEL]: —if that’s the case—
“THE COURT: Yes.
“[DEFENSE COUNSEL]: —with all due respect to the Court, I want the name of that — if we’re going to get into — which was the Cl, Judge, went — I don’t know. I mean, he went on March 2007, and the affidavit — I don’t know what — what day in March, but March of 2007. And then they go get the warrant April 4th, 2007. If we’re going to get into him selling drugs in that house, which is highly — which is highly prejudicial, Your Honor, to him selling drugs— I mean, hell, put a guilty sticker on him right now and let’s be done with it. Then I want the Cl’s name. I want to get a subpoena, and I want them sitting here to talk about the veracity of those controlled buys or all of this cocaine he allegedly saw, Judge; which I asked Sergeant Drummond during the suppression hearing and he didn’t give me the name. He wouldn’t even tell me if it was a male or female. But if we’re going to get into that, Judge, I’d ask this Court to allow Sergeant Drummond to tell me who that is and I’ll have a private investigator go and serve him a subpoena and we’ll have him up here in court so the jury can see if he’s truthful *4 or not truthful and all of that. Because we’re getting into a lot of hearsay based on what that warrant was based on, Judge, and I would ask that the contents of the search warrant, not that they have a valid search warrant—
“THE COURT: Right.
“[DEFENSE COUNSEL]: I concede that. I concede it. Well, I don’t concede it, but I can respect the Court’s ruling, that we are not going to get into the contents, Judge, and that’s what I’m asking is—
“THE COURT: Yes, [Prosecutor]?
“[PROSECUTOR]: Your Honor, the CI didn’t buy from him. The CI just observed drugs in the house. Additionally—
“THE COURT: Good. So the CI didn’t even buy from him.
“[PROSECUTOR]: Right. He just observed—
“THE COURT: He’s just going to say he observed drugs in the house.
“[PROSECUTOR]: Right.
“THE COURT: Okay.
“[PROSECUTOR]: And hearsay is admissible—
“THE COURT: [Defense counsel], how is that prejudicial to your guy?
“[DEFENSE COUNSEL]: Because, Judge, I believe that if—
“THE COURT: I observed drugs in the house.
“[DEFENSE COUNSEL]: Observed drugs, Judge. I would like a chance to cross-examine him and let a jury see if he’s truthful. I mean, he — they’re basing their search warrant on some CI that no one knows about. That’s it.
“THE COURT: Well, we already had the suppression hearing. I mean, nobody asked—
“[DEFENSE COUNSEL]: Right, Judge, and that wasn’t an issue at the—
“THE COURT: Nobody asked for the CI.
“[DEFENSE COUNSEL]: Yes, I did, Judge. I asked — I have the transcript here. I asked, Judge, who was he; was he male, female, and they wouldn’t give me anything besides he was a paid informant and been working there for years.
“THE COURT: No. But, I mean, you never asked the Court to make them turn it over.
“[DEFENSE COUNSEL]: Well, Judge, they didn’t give me the information that day, and I did not—
“THE COURT: I mean, now is the trial, and, you know—
“[DEFENSE COUNSEL]: Well, then, Judge, I’d ask the Court now to give me the name and we’re going into tomorrow and we’ll have a private investigator, Judge, in the next 24 hours to go out and find him then. Judge, it’s highly prejudicial of this guy sitting there— if you read the search warrant, Judge, someone—
“THE COURT: Y’all, we — this— we’ve already had the suppression hearing. Okay? The suppression hearing has come and gone. Okay. And this Court has already ruled that they properly got a search warrant and they properly conducted the search warrant of the house, the cars, et cetera. That’s done. Okay. That’s water under the bridge.
“[DEFENSE COUNSEL]: I agree with you.
“THE COURT: Okay. We’re not here to rehash all of that.
“[DEFENSE COUNSEL]: Judge, that’s not what they just told the Court, that the CI never observed anybody selling drugs.
*5 “THE COURT: [Prosecutor], what’s this — let’s—maybe we’re just wasting time. What exactly are your officers going to say about the search warrant?
“[DEFENSE COUNSEL]: Your Honor—
“THE COURT: What are they going to say?
“[PROSECUTOR]: I’ll let Mr. Drum-mond address the Court, Your Honor. I said that the—
“THE COURT: Officer Drummond, what are you going to say about the search warrant? What are you going to tell the jury?
“SERGEANT DRUMMOND: The probable cause for the warrant was a confidential source advised me that Mr. Marshall had a large quantity of cocaine inside the residence and that he was in control of the cocaine.
“THE COURT: Okay. Is that it?
“SERGEANT DRUMMOND: Yes, ma’am.
“THE COURT: Okay. [Defense counsel]?
“[DEFENSE COUNSEL]: Judge, I’m asking the Court to keep out the contents of that search warrant because it is highly prejudicial, not that they had a valid search warrant-—
“THE COURT: Well, that’s one of the charges against him. Isn’t that where the unlawful possession of a controlled substance comes from?
“[DEFENSE COUNSEL]: From inside the house. I agree with you, Judge.
“THE COURT: Yes.
“[DEFENSE COUNSEL]: I agree with you. All I’m asking the Court to do, Judge, is say we had a valid search warrant, I’m not going to attack him on the stand about is it valid, is the Cl valid. I’m not going to mention any of that, Judge. I’m just asking is it fair—
“THE COURT: All right. Fine, fine. [Prosecutor], let’s just do it. Just say we had a valid search warrant—
“[DEFENSE COUNSEL]: And I’m not going to attack Sergeant Drummond at all about it.
“[PROSECUTOR]: And, Your Hon- or—
“THE COURT: Fine. Just say he had a valid search warrant and you can ask — -you can ask the detective did you go to obtain a search warrant? Yes, I did. And did you get a valid search warrant? Yes, I did. And what did you do? We went over there and executed it, and this is what we found.
“[PROSECUTOR]: And, Your Honor, just this is part of proving our case. In order to prove that he had actual constructive possession of the cocaine in the residence—
“THE COURT: Right.
“[PROSECUTOR]: —we have to have more. And part of that is the search warrant, that he had been observed with large amounts of cocaine in the residence before. That’s part of the proof.
“THE COURT: Right.
“[PROSECUTOR]: And there’s nothing—
“THE COURT: [Defense counsel],
“[DEFENSE COUNSEL]: Well, before. Judge, it’s April 4th.
“THE COURT: Well, Richard—
“[DEFENSE COUNSEL]: Sometime in March?
“THE COURT: —their problem is that — yes. But they’re right. They’re trying to prove that he had possession of that cocaine in the house. Well, they’ve got to prove it. And how are they going to prove it? I mean, your guy is outside *6 in his car when they’re doing the search warrant. And, you know, your argument is going to be, hey, ladies and gentlemen, I mean, yeah, they got a search warrant of the house, and there was cocaine in there, but how does that tie to my guy? I mean, how can you prove that it was his? Well, one of the things the State is going to argue is, hey, we have an informant who saw large amounts of cocaine in there before with Mr. Marshall; which that’s up to the jury what they want to believe or not believe.
“[DEFENSE COUNSEL]: If that’s the case, Judge, then I would ask this Court—
“THE COURT: It’s a constructive possession case.
“[DEFENSE COUNSEL]: —to allow — I agree with you
[[Image here]]
“[DEFENSE COUNSEL]: And my argument is the right for him to confront his witnesses, Judge — ”
(R. 234-44.)
Ultimately, the trial court allowed the State to present evidence regarding the confidential informant’s statements to law enforcement officers as substantive evidence that Marshall had committed the offense of unlawful possession of a controlled substance with regard to the cocaine officers found in the residence. The trial court also admitted the search warrant and the affidavit supporting the search warrant into evidence. However, the trial court refused to require the State to disclose the identity of the confidential informant.
“The United States or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished to a law enforcement officer information relating to or assisting in an investigation of a possible violation of a law.”
Rule 509(a), Ala. R. Evid.
“If it appears in the case that an informer may be able to give testimony relevant to any issue in a criminal case or to a fair determination of a material issue on the merits in a civil case, and the privilege has been invoked, the court shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but the court may direct that testimony be taken if it finds that the matter cannot be resolved satisfactorily upon affidavit. If the court finds there is a reasonable probability that the informer can give the testimony, and the public entity elects not to disclose the informer’s identity, in criminal cases the court on motion of the defendant or on its own motion shall grant appropriate relief, which may include one or more of the following: requiring the prosecuting attorney to comply with an order to disclose the informer’s identity, granting the defendant additional time or a continuance, relieving the defendant from making disclosures otherwise required, prohibiting the prosecuting attorney from introducing specified evidence, or dismissing charges.”
Rule 509(c)(2), Ala. R. Evid. Finally,
“[a] defendant has the burden of demonstrating the need for disclosure of a confidential informant’s identity. Lightfoot v. State, 531 So.2d 57 (Ala.Crim.App.1988). In order to satisfy this burden, the defendant must file a pretrial motion seeking the informant’s identity and request an in camera hearing on the motion. Id.”
Washington v. State, 818 So.2d 411, 422 (Ala.Crim.App.1998).
*7 Initially, we note that Marshall did not file a pretrial motion seeking the identity of the informant or request an in camera hearing on the issue. However, under the facts of this specific case, the defense’s need for the confidential informant’s identity was not immediately apparent. Rather, it was not until the State indicated at trial that it intended to use the informant’s statements as substantive evidence of the unlawful possession offense that defense counsel’s need for the identity of the confidential informant became apparent. Furthermore, because the State indicated that it intended to use the confidential informant’s testimony as substantive evidence, there was no need for an in camera hearing as to that issue. Therefore, this issue is properly before this court.
In this case, the State presented the confidential informant’s hearsay statements to law enforcement officers as substantive evidence of Marshall’s guilt of the unlawful possession offense. Other than the confidential informant’s hearsay statements, the State did not present any evidence that Marshall had ever been in the house where the cocaine was found. Further, the State did not present any evidence that any documents or property belonging to Marshall were found in the house. Finally, the State did not present any evidence that Marshall owned or leased the house or that Marshall paid any utilities for the house. In fact, Drummond testified that the confidential informant’s statements were the only evidence that connected Marshall to the cocaine that was found in the house.
Under these specific circumstances, the confidential informant’s testimony’ was relevant to the issue of Marshall’s guilt on the unlawful possession offense. Also, because the confidential informant did not testify at trial, Marshall did not have an opportunity to confront and cross-examine witnesses against him. Therefore, the trial court should have either excluded evidence regarding the confidential informant’s statements to law enforcement officers or required the State to disclose the identity of the confidential informant. Accordingly, we reverse Marshall’s convictions and sentences and remand this case for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
WELCH, WINDOM, and KELLUM, JJ., concur.